## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | **8:06CR131** |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | **REPORT AND** |
| | ) | |
| ALBERT L. CLARK, | ) | **RECOMMENDATION** |
| | ) | |
| Defendant. | ) | |

This matter is before the court on the motion to suppress filed by defendant Albert L. Clark (Clark) (Filing No. 12). Clark is charged in the Indictment with the possession with intent to distribute more than 5 grams of cocaine (Count I) in violation of 21 U.S.C. § 841(a)(1), the possession of a firearm after having been convicted of a felony (Count II) in violation of 18 U.S.C. § 922(g), and a criminal forfeiture count relating to United States currency seized from Clark and a residence on December 11, 2005 (Count III) in violation of 21 U.S.C. §853. Clark seeks to suppress evidence obtained by the Omaha Police Department (OPD) on December 11, 2005, following a traffic stop of Clark and his vehicle in Omaha, Nebraska. An evidentiary hearing was held on Clark's motion on June 20, 2006. During the hearing, the court heard the testimony of OPD Officers Joseph E. Baudler (Officer Baudler) and Eugene Watson (Officer Watson). A transcript of the hearing (TR.) was filed on June 29, 2006 (Filing No. 25). The parties requested and were granted additional time for post hearing briefing (TR. 62). Such time expired on July 14, 2006. Neither party submitted any additional briefs to the court. The motion was deemed submitted as of July 14, 2006.

### FINDINGS OF FACT

In December 2005, Officer Baudler was assigned to the OPD gang suppression unit and had been using the information from a confidential informant (CI) (TR. 4). This CI had proved reliable in the past based upon information the police were able to corroborate and the CI also had assisted the OPD in a controlled purchase of narcotics under the direction of Officer Baudler (TR. 4, 40). Prior to December 11, 2005, the CI told Officer Baudler that

the CI knew a person named Albert Clark who was involved in the sale of "crack" cocaine (TR. 5). The CI told Officer Baudler that Clark had been selling "crack" cocaine and the CI had obtained "crack" cocaine from Clark in the past (TR. 38). Further, the CI provided a description of some of the vehicles Clark used (TR. 6). Prior to December 11, 2005, Officer Baudler used the CI's information to follow Clark to a location where Clark delivered drugs to another informant (TR. 6-7). That transaction was videotaped by OPD officers (TR. 7). The license plate of the vehicle involved in the transaction was traced back to Clark (TR. 7). A mug shot was obtained of Clark and shown to the CI who identified the photo as that of Clark (TR. 9).

On the afternoon of December 11, 2005, the CI had been riding with Officer Baudler working on the investigation concerning Clark (TR. 31). The CI had been in and out of Officer Baudler's vehicle that day getting information on whether or not Clark had drugs (TR. 31-32). Late in the afternoon, the CI told Officer Baudler that the CI had spoken to Clark and that Clark was in the possession of a quantity of "crack" cocaine and was driving a white GMC Jimmy vehicle bearing a Nebraska license plate number of ONN 661 (TR. 9, 30-32). Officer Baudler arranged to have OPD Officers Watson, Dan Williams (Officer Williams) and Edith Anderson (Officer Anderson) assist in apprehending Clark (TR. 11). Around 7 o'clock that evening, Officers Watson and Anderson saw the white GMC Jimmy drive into a driveway at 37th and Bedford Streets (TR. 43, 46). This residence was familiar to Officer Baudler as Clark was seen at this location on previous occasions (TR. 12). The officers had followed Clark on a previous occasion to pick up an individual who sold "crack" cocaine to another one of Officer Baudler's informants (TR. 12). The GMC Jimmy had stopped in the driveway and the officers drove their police vehicle in behind the GMC Jimmy and activated the police vehicle's emergency lights (TR. 47). Officer Williams drove up in his police vehicle and parked behind the other two vehicles in the driveway (TR. 47). Officers Watson and Anderson got out of their vehicle and approached the GMC Jimmy driven by Clark (TR. 48). Officer Watson asked Clark for identification and for Clark to get out of the GMC Jimmy (TR. 48). Clark complied (TR. 48). Clark was handcuffed (TR. 30). Officer Watson conducted a pat down on Clark and noted Clark's crotch area was elevated despite Clark's several layers of clothing (TR. 48). The weather was cold (TR. 48). Officer

Watson asked Clark "Is that all of you?" and Clark responded "Yes" (TR. 49).  Officer Watson testified his hands were cold and slightly numb so he asked Officer Williams to perform a second pat down of Clark (TR. 50).  Officer Williams did so and informed Officer Watson that he also found Clark's crotch area unnaturally elevated (TR. 51).  Clark's GMC Jimmy was searched and no contraband was found (TR. 30).  Approximately $700.00 in U.S. currency was found on Clark (TR. 21).  Using a Nextel phone, Officer Watson called Officer Baudler, who had arrived at the scene and was standing nearby, and informed Officer Baudler of the circumstances at the scene (TR. 52).  Officer Baudler instructed the officers at the scene to transport Clark to the OPD northeast precinct office near 30th and Ames Street (TR. 15).  Officer Baudler testified Clark was brought to the precinct under a ruse other than the reason that Clark had previously distributed drugs to an informant and the informant had told the Officers that Clark was in the possession of drugs (TR. 15, 19).

Upon arrival at the northeast precinct, Clark was taken to an interrogation room where Officer Baudler advised Clark of Clark's *Miranda* rights (TR. 15-16). Officer Williams was also present in the room (TR. 16).  Clark stated he understood his rights and agreed to talk with the officers (TR. 16-17).  Officer Baudler told Clark that the real reason Clark was brought into the precinct was that the officers were conducting a narcotics investigation for some time and that the officers knew Clark was involved in the sale of cocaine (TR. 16). Officer Baudler asked Clark if Clark had anything illegal on his person because the officers knew Clark had drugs on his person and Clark would be searched (TR. 35).  Clark stated that he had some "crack" under his balls (TR. 17, 35).  Officer Baudler told Clark that even though Clark stated he had "crack" on his person, the officers were going to do a strip search of Clark (TR. 17).  Clark was strip searched, and officers recovered four plastic bags of "crack" cocaine weighing about a quarter ounce each (TR. 17).  The officers continued to interrogate Clark for another twenty minutes and followed the interrogation with a search of Clark's residence (TR. 18).  Clark consented to the search, signed a permission to search form, and accompanied the officers to the residence (TR. 18-19).  Found in the residence were two handguns, some packaging material, a digital scale, and an identification item in Clark's name (TR. 19).

**LEGAL ANALYSIS**

Clark asserts he was arrested at the Bedford Street address when he was removed from his vehicle, handcuffed, and taken to the OPD northeast precinct.  Clark asserts the arrest was without probable cause and all the evidence obtained as a result of his arrest should be suppressed.  The government asserts the information from the CI provided probable cause for the arrest and search of Clark and his vehicle.

As the Eighth Circuit held in *United States v. Sherrill*, 27 F.3d 344, 347 (8th Cir. 1994):

> Probable cause to make a warrantless arrest exists when police officers have trustworthy information that would lead a prudent person to believe that the suspect has committed a crime.  *United States v. Horne*, 4 F.3d 579, 589 (8th Cir. 1993), **cert. denied**, 510 U.S. 1138, 114 S. Ct. 1121, 127 L. Ed. 2d 430 (1994). In reviewing whether probable cause existed, we base our decision on the totality of the circumstances, giving due weight to the inferences police officers could draw from their general experience. *United States v. Wilson*, 964 F.2d 807, 809 (8th Cir. 1992).

*Id.* at 347.

The statements of a reliable confidential informant are themselves sufficient to support probable cause.  *United States v. Wright*, 145 F.3d 972, 975 (8th Cir. 1998).  The Eighth Circuit has stated:

> The core question in assessing probable cause based upon information supplied by an informant is whether the information is reliable.  Information may be sufficiently reliable to support a probable cause finding if the person providing the information has a track record of supplying reliable information, or if it is corroborated by independent evidence.

*United States v. Williams*, 10 F.3d 590, 593 (8th Cir. 1993) (**citing** *Draper v. United States*, 358 U.S. 307, 313 (1959)); **see also** *United States v. Lucca*, 377 F.3d 927, 933 (8th Cir. 2004); *United States v. Gabrio*, 295 F.3d 880, 883 (8th Cir. 2002).

In this case, Officer Baudler had information from a CI who had worked with Officer Baudler in the past and provided reliable information which was corroborated.  Further, Officer Baudler had participated in a drug transaction where another informant had

purchased "crack" cocaine in which Clark was involved.   On December 11, 2005, the CI worked with Officer Baudler and also spoke directly with Clark.  The information provided by the CI was used to stop Clark in the vehicle described by the CI and "crack" cocaine was found on Clark hidden in his crotch area.

The officers had probable cause to stop, arrest and search Clark and his vehicle on December 11, 2005.  Clark's motion to suppress should be denied.

**IT IS RECOMMENDED TO JUDGE LAURIE SMITH CAMP that:**

Clark's motion to suppress (Filing No. 12) be denied.

## ADMONITION

Pursuant to NECrimR 57.3 any objection to this Report and Recommendation shall be filed with the Clerk of the Court within ten (10) days after being served with a copy of this Report and Recommendation.  Failure to timely object may constitute a waiver of any objection.  The brief in support of any objection shall be filed at the time of filing such objection.   Failure to file a brief in support of any objection may be deemed an abandonment of the objection.

DATED this 11th day of August, 2006.

BY THE COURT:

 s/Thomas D. Thalken
United States Magistrate Judge